You can proceed. May it please the Court. My name is Michael Reynolds, and I am arguing on behalf of Appellant Charles Gugliuzza. I would like to reserve three minutes for rebuttal, please. We're here because the Bankruptcy Court misapplied collateral estoppel on summary judgment, precluding Mr. Gugliuzza from getting a trial on the FTC's non-dischargeability action. And we're here because the District Court only got it partially correct in reversing the Bankruptcy Court on the issues of fraudulent intent, good faith, and advice of counsel, but affirming the Bankruptcy Court that collateral estoppel would preclude Mr. Gugliuzza from challenging the FTC's allegations that collateral estoppel would stop him from defending on the other three elements of non-dischargeability. Before we get to the merits, can you explain why, under Bullard, we have jurisdiction here, since the decision by the District Court didn't alter the status quo or fix the party's rights and obligations? Yes, Your Honor, and that is because this, first of all, is a legal question, and second of all, because the decision by this Court — Is intent a legal question? I thought that was a factual issue. Well, in — What it was remanded for. Well, the legal — correct, but the legal issue being the extent to which collateral estoppel applies. The question that this Court's — in fact, if you look back to this Court's decision under Bonner-Mall from 1992, the rule that this Court, in its famous middle ground between the Third and Seventh Circuit approaches to appellate jurisdiction, said that the — that this Court can hear an appeal, even if it's a District Court order remanding to the Bankruptcy Court for significant further proceedings, if doing so would materially aid the Bankruptcy Court in reaching its disposition on remand. Can I just start with asking whether Bonner-Mall is reconcilable with Bullard? I believe that it is, Your Honor. How can that be, since Bullard says it has to finally dispose of and fix the party's rights and obligations? In fact, Bullard said it couldn't look at the denial of plan confirmation. So explain to me how Bonner-Mall, which says you can decide something even when there's been a remand for fact findings, how is that reconcilable with Bullard? Well, because, Your Honor, if you look at this Court's decisions, all post-Bullard, addressing the special context of bankruptcy appeals from the District Court, every single one of them, In re Perl, In re Transact, Inc., In re R&W, St. Rose, LLC, all of them acknowledged that the flexible finality approach that this Court has taken with respect to bankruptcy appeals from the District Court does retain vitality. Now, granted, all three of those came to the conclusion that that was, yes. Let's not fight with Bullard. We'll just find that it wasn't final here. So we don't really have any post-Bullard case that says, notwithstanding Bullard, we could do something as in media race as this is and that we could decide it. So there's really no support for a case that says where there's been remand for factual findings. Yes. Is that right? I think that's correct, except that if you look at the most recent, I would say maybe the best enunciation of the four-factor test for flexible finality, that was affirmed in the landmark fence case. And if you look at the factors under landmark fence, and granted landmark fence went the other way in the decision it came to, I suppose what this Court's going to have to do as a matter first in this case is determine whether or not the flexible finality approach continues to exist. Ninth Circuit cases post-Bullard have said, yes, it does exist, but we don't find it here. We never find it. Yeah. If there's a case where flexible finality should be applied, this is that case. This is that case because under those four factors, it fits in so well that this case almost seems like it was tailor-made for the landmark fence factors. Why do you say that? Because it seems like it's almost not this case. Well, because if you look at the first factor, the need to avoid piecemeal litigation, this is a case where we are definitely going to have a trial in the bankruptcy court. That trial is going to be on three issues. However, if this case comes back up for appeal again, which it will, one side or another is going to be dissatisfied with the result on trial, we're going to come back and eventually be in front of this court asking for a determination of whether or not the three other elements of nondischargeable fraud should have been part of that trial. So we'll end up with two trials at a minimum. Move past the piecemeal litigation because it seems like there's no way to avoid piecemeal litigation in this particular case because no matter what we decide, even if we reached it and it went back, it would come back up to us and it would go back down again. So let's just assume that there's going to be piecemeal litigation here. Maybe you could address the other three factors. Or is it four? There are four factors, so the other three, yes, Your Honor. And so starting with judicial efficiency, it's inefficient for the entirety of the judicial system to have two trials. I don't believe that two trials will be necessary. Or the piecemeal litigation. Well, and the factors are interrelated, I would concede. If we look at the systemic interest in preserving the bankruptcy court's role as a finder of fact, this court giving guidance to the bankruptcy court saying, yes, these are the issues that still need to be decided, that's going to be the final decision. But we're not depriving the bankruptcy court of any factual finding role. Correct. We're actually enhancing. Unlike Bonner Mall, it isn't like a legal decision here could relieve the bankruptcy court of its obligation to find facts on intent, right? So there's nothing we could do that would relieve the bankruptcy court of its responsive fact-finding role. That's correct. But what this court could do is enhance the bankruptcy court's role by telling the bankruptcy court, this is the scope of the trial that's going to take place. We already know there's going to be a trial. We already know it's going to encompass these issues. What we'd like to know from this court at this time is whether it's just these three issues or whether it's going to be all of the issues that Mr. Guglielmo wants to have tried. That's all we want to have determined for us. And the fourth factor is whether the- Also, couldn't we also, though, just say that the district court was wrong and just apply the collateral estoppel? Well- If we get to the merits, which you want us to get to the merits? Well, we're not asking for a decision on the merits. We're asking for the bankruptcy court to make the decision on the merits as to the other three elements. We're asking for an expanded playing field at trial, Your Honor. So if we address collateral estoppel and say we said all three of them, you went on all three of your merits, the collateral estoppel shouldn't have applied, then it all goes to the bankruptcy court. The bankruptcy court does its back fighting and the appeal comes back to us. So probably it would be either less efficient or more efficient, depending on whether you're the bankruptcy court or us, right? Well, there'll be another appeal- Less efficient for us. More efficient for the bankruptcy court, perhaps. It's certainly more efficient for the bankruptcy court, but I would argue it's also more efficient for the Ninth Circuit Court of Appeals because if the case goes back now without the court assuming jurisdiction, we'll have one trial, we'll come back up for an issue as to whether or not there has been- whether or not the bankruptcy court came to the right factual conclusions, as well as the legal questions that have been addressed. But we've also got that intermediate level of the district judge. The district judge has made a decision on those. We're going to have to go through the district judge before we get here, and the district judge is going to say, I've already decided all these issues. What am I looking at this for? So, you know- I guess if the bankruptcy court decides that he didn't have the requisite intent, you know, then we're in a different situation. Is that right? I think we are, although there's every indication the FTC would probably appeal that decision, but on factual grounds, not on legal grounds. Pardon me, counsel. Yes, Your Honor. Following up on Judge Ikuda's question, if we dismiss for lack of jurisdiction and you go back down to the bankruptcy court and try the intent issue and the bankruptcy court finds that there was an intent to deceive, you win. Correct. What's wrong with that? Oh, nothing's wrong with that, Your Honor. So, therefore, we can start off with the first formulation which was used, which was the present judgment doesn't determine all the issues. In fact, it doesn't even determine who wins. But, Your Honor, if the FTC were to appeal that, which there's every indication they would appeal from the bankruptcy court, then Mr. Gugliuzza would still have to appeal the issues that he didn't get a chance to try at the bankruptcy court. So we'd still have another trip back up the appellate ladder to ask the exact same questions that we're asking now because Mr. Gugliuzza would certainly cross-appeal if the FTC appealed a ruling in his favor on intent. Do you want us to determine the issue of intent now? No, Your Honor. We don't want a determination on the issue of intent. Of course you don't. We want a trial on the issue of intent. So you're going to have a trial on that. Correct. I don't see the advantage, but go ahead. And what we would like— Can you address the irreparable harm? I think you conceded that there was an irreparable harm in this case. Well, there's no irreparable harm to the FTC. The irreparable harm is to both Mr. Gugliuzza and to the consumers that the underlying FTC enforcement judgment was— And what's the irreparable harm? Well, the irreparable harm is that Mr. Gugliuzza is going to run out of resources. He cannot afford to have two or more trials on this. We'd like to have one trial rather than piecemeal trials that are separated by an extended appellate process. And also, if you look at the entire point of the FTC's underlying enforcement action, that was for the purpose of getting restorative remuneration to consumers. The longer this process drags out, and it will certainly drag out longer if there are two trials and two trips up the appellate ladder. But there's no money coming for the restorative process, right? I mean, it would be dischargeable in bankruptcy. That's your argument. Well, no. The FTC is already—Mr. Gugliuzza's estate is already funded, and the FTC has already collected significant monies. The FTC has taken the position in the lower courts that it is not going to give any money back to consumers or even fine these aggrieved consumers until all the legal proceedings are complete. The longer that drags out, the less likely it is that consumers are going to be getting their redress. Consumers will disappear. Some will fall off the grid or pass on. So the longer this takes, the more irreparable the injury to consumers becomes. Okay. I guess we'll ask the FTC about that since I think they're more interested in the consumers. So you're at three and a half minutes if you want to reserve. Yes, I guess I would reserve at this point. Thank you. Good morning, Your Honors. May it please the Court, Michelle Arrington for the Federal Trade Commission. I will start with a point that Your Honors made, which is the interests of disincentivizing piecemeal litigation and protecting judicial efficiency are not advanced in this case because, as Your Honors have observed, there is going to be a trial in the bankruptcy court on the issue of intent regardless of what happens in this appeal. And as you noted, if the Commission loses on intent and it's by no means a foregone conclusion that the Commission would appeal a fact-based finding, if that's the case, this case goes away, we lose. And this Court need never address the issue of collateral estoppel. But as a broader matter, the systemic interest in preserving judicial economy are preserved by a rule which is reflected in the Supreme Court's decision in Bullard and this Court's recent decisions applying a flexible finality test and not confronting the issue of whether Bullard replaces that test. All of those cases recognize that, as a general matter, that when there is a remand, reversal and remand, to the bankruptcy court for fact-finding on a central issue, which is the case here, that that is a non-final decision and that the interests of judicial economy are served by finding that that is not a final decision and by postponing any appeal until all of the issues that settle the legal rights of the parties are brought to this Court. Go ahead. Well, if we reach the merits, and we were, I mean, you could do better on the merits than you did in the district court, right? If you reach the merits, including addressing the issue of intent? Yeah. Well, certainly in this particular case, it may very well be that, depending on what the outcome is, that the parties would be happier with having it decided in this particular case. But finality, as this Court has made clear and the Court in Vilene, which articulated the four-part test, recognized, finality should be addressed in the interest of protecting finality shouldn't turn on the particularities of individual cases. And if there are cases where, because of harm to the parties or legal undisputed issues that could resolve everything else, that those are best addressed, not by loosening the standards of finality, but by taking advantage of the mechanisms for discretionary review. So we would be perfectly happy to have a ruling in our favor now and know that in advance. But as a general matter, litigants and the FTC as well are best served by clearer rules on finality and when there is and is not jurisdiction. So let's say that we looked at the collateral estoppel ruling of the district court and we decided it was wrong on all or some of its rulings, that, in fact, the Commerce Planet decisions didn't apply to the 523A determination. And so that would be our rule. The district court erred on these two things. Then it would go back to the bankruptcy court for factual finding in the first instance, right, because it wasn't collateral estoppel, misrepresentation, knowledge, whatever it was. The argument opposing counsel makes is that would be more efficient. The bankruptcy court could have trial on all of the factual issues that the Ninth Circuit has now said are in play. Why isn't that more efficient to avoid piecemeal litigation? I think in this particular case it may, in fact, avoid one additional step. It might not because, as we've already discussed, if we lose on intent, then that's the end of the dispute if it's not appealed. But certainly that scenario, that is one scenario, and that may in the end be more efficient depending on how it plays out. But, again, this Court's decisions and certainly the Supreme Court's decision in Bullard looks beyond the particularities of every individual case and seeks to address the typical finality standards. Now, what Bullard, the point that the Supreme Court made in Bullard is that bankruptcy is different than other cases in that within a larger bankruptcy proceeding, one can have and typically does, you know, typically are subsidiary almost stand-alone disputes. This adversary proceeding is one such completely stand-alone dispute. There is one issue in this case, and the question in this case is whether the judgment debt is dischargeable or not, and that is entirely unresolved. So under the Bullard, again, teaches that once you've identified that subsidiary dispute, the question becomes whether the rights and obligations of the parties are settled, and you judge finality based on that question. And there is no question in this case that the rights and obligations of the parties are undisputed. So as a matter of judicial economy and having a rule that one can look to and be guided by in this litigation, in future litigation, a standard of finality that doesn't depend on whether a particular case would be a little more efficient or another case would be less efficient, depending on the outcome, is what best serves a judicial economy. So it's basically, I mean, if I were making your argument in hyperbole, if we open the door to this, then we're opening the entire gate, then everyone could make an argument of more efficiency and turn the argument away from whether it's really final and determines the rights of the parties. Yes, Your Honor. Then there is always going to be arguments that you can make about why your case is different. And this Court, in fact, has found no jurisdiction. When the parties affirmatively both want the court to exercise jurisdiction and issue a decision on the merits. Is Bonner Mall reconcilable with the Supreme Court's decision in Bullard? Because Bonner Mall is the one that is most close. No, Your Honor, I don't think it is. And I think that this Court's more recent decisions and certainly after Landmark Fence and after the Supreme Court's recent decision, application of the looser standard in Bonner Mall would be simply inconsistent with those decisions. It should not be followed. Unless you have other questions on jurisdiction, I would like the opportunity to proceed to the issue of collateral estoppel in case the Court decides to reach the merits of that. I won't spend much time on the question of deception, but if you have questions about that, I certainly will take that. The main point that I want to make is that the concept of deception that is in the FTC Act and the FTC's Act cases incorporates the common law elements of fraud and deception that this Court has applied in the context of non-dischargeability cases, both with regard to affirmative misrepresentations or conduct that affirmatively conveys a message to consumers that is false and as well the failure to provide information about basic facts of a transaction that misleads consumers. And the Court's decisions in In Re Isha, In Re Apta, which discuss the restatement second of torts and the concepts of misrepresentation of false statements all reflect the concepts of materiality of falseness by net impression and failure to inform consumers of facts that are material to their determination that misleads them. So we think it's quite clear that that element is established and there is no case that we are aware of that has ever found differently. With regards to reliance, this Court in FTC v. Figge, in the context of the FTC Act case, which stated that a presumption of actual reliance arises when there is materiality, material misrepresentation that is widely disseminated and consumers have purchased the product. That is reliance. Is that particular case your best authority for the assertion that the FTC need not provide individual proof of reliance for the restitution order to be non-dischargeable? In this jurisdiction, that is the case that states that very clearly. And what that case makes clear is that this burden-shifting where this is how the Commission proves actual reliance by consumers and this Court's recent decision affirming the district court's merit decision demonstrates that that is a means of proving reliance. And that reliance has been, once it is established, regardless of how one established it. But for 523A, there has to be evidence of actual and justifiable reliance. That was Field telling us to rely on the restatement second of tort. So I don't see, I'm having problems with how a presumption of reliance could collaterally stop a need to show actual and justifiable reliance. So the presumption of reliance is for proof in the FTC restitution context, not in the 523A context. So help me understand that, because actual and justifiable reliance was not in fact shown. Well, Mr. Guglielmo and his arguments conflate two different issues. Conflates how one goes about proving something and what it is that has been proved. Now, as the court's decision, the district court's discussion of this issue made clear, and the court relied on Figge among other cases, the presumption is how the Commission goes about proving actual reliance. And this other side has an opportunity then to come in and show. And what is being proved there is that, as a result of material misrepresentations or deceptive conduct, that consumers relied on that, and based on that, relied on that to their detriment by purchasing the product. Is there any presumption in bankruptcies? In other words, in a 523A proceeding, would the bankruptcy court say this is, we don't need proof of actual reliance, a presumption is adequate? Is there a case? Well, the court's decisions, Ishai is one case that discusses that. I believe that this court's Inrei Hapta also discusses it, that there are circumstances where the elements, reliance and injury in particular, because of the particularities of that case, where those are difficult to prove directly. And so whether you call it a presumption, whether you call it circumstantial evidence, both of those cases address how that can be proved. In the context which I think is fairly analogous to the difficulties of proving reliance on an individualized basis in the FTC Act, in the credit card kiting context, which was what the court dealt with in Ishai, there's not a direct relationship between the credit card holder and the credit card issuer, because there's actually a merchant in between. And so this court addressed that and addressed how one proves the elements based on a totality of the circumstances. I think that's fairly analogous to this case, where you have the Federal Trade Commission, which does not, there are basically three players here. There's the Federal Trade Commission, which is seeking to provide redress to the consumers who are injured, but the direct relationship is between the consumers and the merchant. So there are difficulties of proof, and only added to in the context of the FTC's actions, because we're dealing here with widespread fraud, mass fraud. And it simply cannot be that in the context of a non-dischargeability proceeding, that there would be required in an FTC action or other, let's say, government enforcement action, the SEC's cases are fairly analogous, where you would have to prove, in order to protect a judgment from discharge, bring in every consumer you could find to prove on an individualized consumer-by-consumer basis that they relied, that would be akin to a rule that there is no way to protect a judgment that is entered in this sort of action. And that simply cannot be the case. And this Court's decisions have not adhered to such a rigid obligation to prove those elements in a single, rigid way. The arguments that Mr. Guglielmo makes about injury mirror his arguments on reliance, and our responses are the same on that as well. Thank you, Your Honor. Excuse me. First of all, Your Honor, I'd like to make it clear that there has not been a finding of fraud in this case against Mr. Guglielmo. In fact, the District Court was very clear in its opinion on the appeal from the Bankruptcy Court's grant to summary judgment that there was not a trial in the enforcement proceeding on the issue of fraud. The issue of fraudulent intent was not tried. It was Mr. Guglielmo who did not present a defense on that issue. So it would not... And the parties have not briefed the intent issue here on appeal. I don't think it would be appropriate since there has not been any finding on a lower court level with respect to that. As for the issue of justifiable reliance, you know, counsel made a very good point. There is a shift in the burden of proof. And under the rules of collateral estoppel, when the burden of proof shifts, collateral estoppel cannot be applied. In this case, the very findings of the district judge in the enforcement proceeding are clear as to why collateral estoppel should not be applied here. One of the statements that stands out where the district court said in its memorandum decision, the Federal Trade Act is violated if an advertisement induces the first contact through deception, even if the buyer later becomes fully informed before entering into the contract. Now, that cannot be even... That's not actual reliance, let alone justifiable reliance. In... You know, furthermore, the district judge said and cited other cases saying that the FTC, in order to obtain the relief that it did in the enforcement action, need not show that all consumers were deceived or that they relied on the misrepresentations. And, you know, whatever it was that was necessary to make the ruling under the FTC Act in the enforcement proceeding, it certainly doesn't rise to the level of showing justifiable reliance in a fraud case that is being pled under Section 523A2A. And clearly, the Field v. Manns decision of the Supreme Court is still good law on that issue. As for the issue of there having been misrepresentations, I think it's also important to look again to the district court's decision. Under the district court's decision in the enforcement proceeding, the court was clear that it was not required to find that there was an actual misrepresentation or that anybody was actually deceived. It only needed to find that there was a likelihood of deception. And that just gets to the lower standard that's necessary to prove liability under the FTC Act, which has a completely different policy and purpose behind it than the nondischargeability statute in bankruptcy. It's a lower standard. It's a lower thing. It's an easier burden to be met by the FTC. Once you get to fraud under the nondischargeability statute, it's a completely different animal. Same thing with the issue of damages. Under the FTC Act, proof of actual injury to actual consumers was not necessary. Even if the federal district judge did find in its enforcement proceeding that there was a consumer that had been deceived, it wasn't a necessary finding. It wasn't something that was necessary or critical to the imposition of liability under the FTC Act. However, it is necessary, it is critical, to a finding of fraud that is nondischargeable under Section 523A2A. So if we can clear the jurisdictional hurdle, which seems like it's a heavy hurdle or a large hurdle, and the Court's going to have to decide whether Bonner Mall is still good law in light of Bullard, I believe that it is. I believe the Court has already said that it is when it made its decision in Landmark Fence. All right, you're over time, so you need to wrap it up. Then I think the Court will come to the conclusion that the three remaining issues that the district court said were collaterally estopped should not be collaterally estopped and that Mr. Guglielmo should have his day in court on those three issues. Thank you. All right, thank you both for your argument. This matter will stand as it is. This Court is in recess until tomorrow morning. Before we adjourn, I think we should adjourn today, December 7th, in memory of our valiant troops who were attacked 75 years ago at Pearl Harbor and in honor of our troops, which today still continue to protect us from that type of action. I fully agree. Thank you. We respect the service of all of those who serve. Thank you very much for that.
judges: Callahan, Bea, Ikuta